**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Josimar V.G.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

Civ. No. 26-4013 (JWB/ECW)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Kira Aakre Kelley, Esq., Climate Defense Project, counsel for Petitioner.

David W. Fuller, Esq., United States Attorney's Office, and David R. Hackworthy, Esq., Department of Homeland Security, counsel for Respondents.

---

An Immigration and Customs Enforcement ("ICE") officer arrested Petitioner Josimar V.G. at the Dakota County Jail as he was being released on a misdemeanor theft charge. ICE had obtained an administrative warrant that morning. The question is whether ICE had issued the Notice to Appear ("NTA") by the time the officer made the arrest, as its regulation requires. The weight of the evidence shows that the NTA issued later. The officers also lacked reason to believe Petitioner was likely to escape in the time needed to issue the Notice. Because the record here does not show a lawful basis for Petitioner's present custody, the petition is granted in part.

## BACKGROUND

Petitioner is a citizen of Mexico who entered the United States without inspection in 2009. (Doc. No. 1, Petition ¶ 11; Doc. No. 7, Draves Decl. ¶ 4; Doc. No. 7-6 at 1.) He alleges that his mother brought him to the country as an eight-year-old, but she was later deported and he became homeless. (Petition ¶¶ 11–12.) He also alleges that his father and an aunt were murdered by a cartel in Mexico, which makes him afraid to return. (*Id.* ¶ 12.) Eventually, Petitioner was adopted by his aunt, who is a U.S. Citizen and a Minnesota Resident. (*Id.* ¶ 13.) Petitioner alleges that he has obtained Special Immigrant Juvenile Status and can apply to become a lawful permanent resident. (*Id.* ¶ 14.) He lives with his fiancé in St. Paul, Minnesota. (*Id.* ¶ 15; Doc. No. 7-6 at 1.)

On March 8, 2026, Petitioner was issued a citation for misdemeanor theft by local law enforcement. (Petition ¶ 16; Draves Decl. ¶ 5; Doc. No. 7-1.) He failed to appear for his arraignment on April 8, 2026, and an arrest warrant was issued by the state court judge. (Petition ¶ 16; Draves Decl. ¶ 6; Doc. No. 7-2.) Petitioner alleges that he did not receive notice of the arraignment until after the hearing date. (Petition ¶ 16.)

On September 8, 2026, local law enforcement arrested Petitioner on the warrant for the missed arraignment. (Petition ¶ 17; Draves Decl. ¶ 7; Doc. No. 7-6 at 2.)

An ICE agent reported that he encountered Petitioner at the Dakota County Jail the next day, performed a records check, and issued a Form I-247A detainer. (Doc. No. 7-6 at 2; Doc. No. 7-4.) Although ICE's record of the encounter does not describe the manner of the initial encounter, Respondents write in their answer that ICE learned of Petitioner's presence at the jail after a records check. (Doc. No. 6 at 2.)

A different agent issued a Form I-200 arrest warrant, which indicates that it was digitally signed at 7:03 a.m. on September 9, 2026. (Doc. No. 7-6 at 2; Doc. No. 7-5.) Later in the day, a third agent responded to the jail, identified himself, served the I-200 warrant, placed Petitioner under arrest, and brought him to an ICE facility for booking. (Doc. No. 7-6 at 2.) ICE's record lists time of the encounter as 12:43 p.m., and the location of arrest as the Dakota County Jail. (Doc. No. 7-6 at 1, 2.)

Yet another agent issued a Form I-862 Notice to Appear ("NTA"), charging Petitioner as being present without admission or parole and lacking a valid entry document. (Doc. No. 7-3 at 1, 4.) The NTA is dated September 9, 2026 and signed in two places, but the signatures do not include a time. (*Id.*) The NTA indicates that it was served in person on September 9, 2026, but the Certificate of Service does not include a time or location of service. (*Id.* at 3.) The final page states that Petitioner is "currently residing" at the Sherburne County Jail in Elk River, Minnesota. (*Id.* at 4.)

Public records from Petitioner's state court case indicate that an in-person hearing took place on September 9, 2026. *See State of Minnesota v. Josimar V.G.*, Court File No. 19WS-CR-26-2625 (Minn. Dist. Ct. 2026). At 9:16 a.m., the state court issued an order appointing a public defender, who filed a motion for discovery at 9:48 a.m. *Id.*, Index Nos. 5, 6. The state court also issued an order for Petitioner to be released on conditions. *Id.*, Index No. 7.

Petitioner alleges that the arresting agent approached him while he was being released from jail and showed him a paper that the agent claimed was a "felony warrant." (Petition ¶ 17.) Petitioner alleges that he submitted to the arrest, was then booked and

held at the Bishop Henry Whipple federal building, and was eventually transferred to the Sherburne County detention center. (*Id.*) Petitioner alleges that the "felony warrant" was actually a Form I-862 Notice to Appear. (Petition ¶ 18.)

When the Petition was filed, Petitioner was held at the Sherburne County Jail. (*Id.* ¶¶ 6, 17.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims his detention without a bond hearing violates Due Process. (Petition ¶¶ 45–52.) He also claims that he was arrested in violation of the governing statutes and in violation of his Fourth Amendment rights. (*Id.* ¶¶ 53–56; *see also* Doc. No. 8 at 6–8.)

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. His claim thus asks whether Respondents acted under the authority conferred to them by Congress. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022).

To arrest an individual, ICE must rely on either a valid Form I-200 administrative warrant or conduct a proper warrantless arrest under 8 U.S.C. § 1357(a)(2). *See Arizona v. United States*, 567 U.S. 387, 407–08 (2012).

Respondents rely on *Arias v. Rogers*, 676 F.2d 1139, 1142–44 (7th Cir. 1982), to argue that the commencement of removal proceedings forecloses review of the arrest. (Doc. No. 6 at 14–19.) In *Arias*, the detainees could promptly seek release from an Immigration Judge. Here, Respondents contend that detention is mandatory and that the Immigration Judge lacks authority to redetermine custody under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025). With that avenue closed, *Arias* gives little reason to foreclose review of the legal basis for the custody Petitioner is challenging.

Respondents next contend that the I-200 was valid and issued prior to Petitioner's arrest here. (Doc. No. 6 at 19–20.) Petitioner argues the I-200 was invalid because it was issued prior to the NTA, pointing to 8 C.F.R. § 236.1 for support. (Petition ¶ 33; Doc. No. 8 at 6–7.)

The regulation authorizes arrest on a Form I-200 "[a]t the time of issuance of the

notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). Even assuming ICE could sign the warrant before issuing the notice, the officer could execute it only once the notice had issued.

The evidence in the record on timing points in both directions. Petitioner says the officer handed him a paper at the Dakota County Jail and called it a "felony warrant." (Petition ¶ 17.) He later showed counsel what he identified as that same paper on a video call, and counsel recognized it as an NTA. (*Id.* ¶¶ 17–18 & Verification.) That account is evidence that the NTA existed at arrest. Counsel could identify the paper she saw on the call, though she did not witness the handoff, and her account does not establish whether the NTA had been signed when Petitioner received it. The officer's contemporaneous account identifies the I-200 as the document served at the jail, as does the warrant's signed certificate of service. (Doc. No. 7-5; Doc. No. 7-6 at 2.) Neither document answers by itself whether an NTA had also issued.

The signed NTA supplies the most persuasive evidence in this sequence. It places Petitioner at the Sherburne County Jail as his current residence. (Doc. No. 7-3 at 1, 4.) At the time of arrest, he was at the Dakota County Jail. His next stop was the Whipple Building for booking, where he says he spent about eight hours before being transported to Sherburne. (Petition ¶ 17; Doc. No. 7-6 at 2.) The issuing officer might have entered an anticipated destination, Respondents are not clear, but the form identifies Sherburne as the place where Petitioner was then residing, and the officer signed it at Fort Snelling. Read together with the arresting officer's account of service at Dakota County, the NTA's description of Petitioner's residence makes it more likely than not that ICE issued

the NTA after the arrest. The precise hour is unnecessary to that finding, as is any finding about whether Petitioner had reached Sherburne when the notice was signed. The warrant therefore did not authorize the arrest when it was made.

Finally, Respondents argue that even if the I-200 was not valid, the circumstances satisfy the requirements for a warrantless arrest under § 1357(a)(2). (Doc. No. 6 at 20–23.) A warrantless arrest may occur only when an officer has reason to believe that a noncitizen is present in violation of immigration law and likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). Respondents fare no better under that standard.

The phrase "reason to believe" has been interpreted to mean constitutionally required probable cause. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). And "likely to escape" means likely to disappear before officers can obtain a warrant or likely to evade detention altogether, not just whether the noncitizen would remain at the scene of the encounter. *See Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (stating the phrase means likely to "disappear before a warrant could be obtained"); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016) (construing the phrase as meaning "likely to evade detention by immigration officers"); *see also A.P.P. v. Blanche*, Civ. No. 26-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (collecting cases that construe the meaning of "likely to escape").

The question under "likely to escape" is whether immigration officers would have trouble finding the noncitizen again once they obtain a warrant. *See United States v. Bautisa-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct 15, 2018), *R&R adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018). The analysis

therefore considers whether the noncitizen could be found later at another clearly identifiable location, like their home or place of employment. *See, e.g.*, *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civ. No. 25-3417 (BAH), 2026 WL 1256234, at *11 (D.D.C. May 7, 2026). ICE itself has given the "likely to escape" phrase this meaning. *See Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), Doc. No. 85-1 (D. Minn. Filed Jan. 30, 2026) (attaching a January 2026 memorandum from former ICE Acting Director Todd Lyons stating that "likely to escape" means "unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained").

Removability alone does not make a noncitizen likely to escape. *See Moreno*, 213 F. Supp. 3d at 1007 (recognizing that equating potential removability with escape risk renders § 1357(a)(2) meaningless); *see also Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 945–46 (D. Minn. 2017) (concluding that the reason to believe a noncitizen was subject to removal did not show likelihood of escape). The inquiry implicates various considerations. Prior enforcement encounters, conflicting documents, and previous removals from the country weigh in favor, while lengthy residence in the country and strong community ties weigh against a person being likely to escape. *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30–31 (D.D.C. 2025) (collecting cases to discuss factors that weigh for and against likelihood of escape).

With respect to escape risk, Respondents contend that "ICE ran a records check and found that Petitioner was arrested by local law enforcement for failing to appear for an arraignment." (Doc. No. 6 at 22.) Their declarant states, "On September 8, 2026, the

Dakota County Sheriff arrested Petitioner pursuant to the April 8, 2026 warrant." (Draves Decl. ¶ 7.) But Respondents' underlying record of the arrest does not mention the missed arraignment as any part of their investigation. Instead, the agents reported that local law enforcement had arrested Petitioner on his theft charge. (Doc. No. 7-6 at 2.)

Even assuming the officers knew about Petitioner's missed arraignment that when they arrested him, and giving that missed appearance its full weight, § 1357(a)(2) asks whether they had reason to believe he was likely to escape before a valid warrant could be obtained. Before the immigration arrest, ICE had located Petitioner at the Dakota County Jail, lodged a detainer, and obtained a signed warrant. (Doc. Nos. 7-4 at 1, 7-5, 7-6 at 1–2.) The officers had only to issue the NTA before executing the warrant. The state judge's order gave them reason to expect that Petitioner would leave the jail. Neither the missed appearance nor anything the officers observed at the jail gave them probable cause to believe he was likely to evade them in the time needed to issue the NTA.

Finally, Respondents point to their compliance with 8 C.F.R. § 287.3, which generally provides for a post-arrest examination, a determination about removal proceedings, notification of the reasons for detention, and a custody determination within 48 hours of a warrantless arrest. But that regulation does not provide that complying with any of its provisions cures an otherwise invalid warrantless arrest. Compliance with those post-arrest procedures does not supply the statutory authority that § 1357(a)(2) required at the time of the warrantless arrest.

On this record, Respondents lacked probable cause to conclude that Petitioner was likely to escape when they arrested him. Accordingly, Petitioner's arrest violated

8 U.S.C. § 1357.

### B. Remedy

The remaining question is the consequence of the unlawful arrest. Respondents contend that Petitioner is properly subject to mandatory detention under § 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an unauthorized arrest.

#### 1. Release preserves the statutory text and structure

Under *Avila v. Bondi*, 170 F.4th 1128, 1136–38 (8th Cir. 2026), § 1225(b)(2)(A) can require detention of an applicant for admission encountered in the interior. The statute directs detention for a removal proceeding once an examining officer makes the determination it prescribes. *Avila* did not decide whether Respondents may continue custody after arresting a noncitizen at a county jail before an administrative warrant could lawfully be executed.

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL 2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v. Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto*

*Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest would substantially diminish the legal and regulatory limits placed on immigration arrests. *See, e.g.*, *Carlos F.P.P. v. Blanche*, Civ. No. 26-3123 (JWB/JFD), 2026 WL 2824801, at *5–6 (D. Minn. Sept. 21, 2026) (explaining how statutory construction preserves distinct arrest and detention functions). A warrant must be based on probable cause and generally permits an arrest only once an NTA is issued. A warrantless arrest is allowed only when specified conditions are met. Yet under Respondents' reading, ICE could arrest a noncitizen and even wholly ignore those requirements, conduct the § 1225 inspection made possible by the arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass the rules for making an interior arrest.

### 2. *Bilokumsky* and later proceedings

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a subsequent deportation proceeding.

Respondents note that Petitioner was examined on September 9 and that a decision to keep him in custody was made that day. (Doc. No. 6 at 23.) The I-213 records the officer's conclusion that Petitioner was inadmissible on the two grounds later set out in the NTA, and its disposition entry reads "Notice to Appear." (Doc. No. 7-6 at 2–3.) Those entries explain why ICE placed Petitioner in removal proceedings. Even accepting the officer's determination of inadmissibility, the entries record the processing of an arrest already made. They identify no other exercise of authority by which ICE lawfully took custody of Petitioner. Reading § 1225 to sustain detention on those facts would allow the very processing that followed the arrest to dispense with the requirement that the notice issue before the warrant is executed. On this record, Respondents' asserted basis for continued custody depends on the arrest itself. That is why it supplies no sufficient ground for Petitioner's detention under *Bilokumsky*.

The appropriate habeas remedy is to release Petitioner from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That relief is narrow. His removal proceeding may continue after release. *See Lopez-Mendoza*, 468 U.S. at 1039–40. The writ extends only to the custody challenged here. Respondents are not precluded from making a later arrest under lawful authority and in compliance with the procedures governing that arrest. *See* 28 U.S.C. §§ 2241(c)(3), 2243.

However, an additional restriction on re-detaining Petitioner is warranted here. Respondents maintain that § 1225(b)(2)(A) requires Petitioner's detention and that an Immigration Judge lacks authority to grant him bond. That position matters here because ICE has re-arrested successful habeas petitioners in this District as they were being

released, in one instance within a minute. *Juan Y.P.M. v. Mullin*, Civ. No. 26-4662 (JRT/LIB), 2026 WL 3521183, at *3 & n.4 (D. Minn. Nov. 16, 2026). If that happens here, Petitioner will lose his liberty again before counsel can test whether ICE has corrected the defect in the initial arrest. A later ruling cannot restore that time.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Josimar V.G.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must arrange for Petitioner's immediate release from custody. Respondents must provide Petitioner's counsel at least one-hour advance notice of the release time and location.

3. When Petitioner is released:

   a. **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

   b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota,

Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents shall release Petitioner without conditions. They may not require him to sign a release instrument or impose or reimpose conditions of supervision in carrying out this Order.

4. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Petitioner's custody was found unlawful because his arrest occurred before issuance of the NTA and because the statutory requirements for a warrantless arrest were not met. Before re-detaining Petitioner in the pending removal proceedings, Respondents must first obtain leave in this case. The motion must be served on Petitioner's counsel, identify the authority and facts supporting the proposed arrest, and explain how the proposed arrest complies with the requirements governing it. Respondents may request expedited consideration.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 24, 2026
Time: 5:05 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge